NO. 07-08-0363-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â NO. 07-08-0364-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 4, 2009
______________________________

DONALD ELIJAH MATTHEWS, JR., 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NOS. 57,858-A & 57,859-A; HON. HAL MINER, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
Â Â Â Â Â Â Â Â Â Â Appellant Donald Elijah Matthews, Jr. was convicted of violating a protective order
and committing arson. He contends that the evidence is both legally and factually
insufficient to sustain those convictions. We disagree and affirm the judgments. 
Â Â Â Â Â Â Â Â Â Â Standard of Review
Â Â Â Â Â Â Â Â Â Â The applicable standards of review are explained in Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), Watson v. State, 204 S.W.3d 404 (Tex. Crim.
App. 2006) and their progeny. We refer the parties to those cases. 
Â Â Â Â Â Â Â Â Â Â Violation of a Protective Order
Â Â Â Â Â Â Â Â Â Â Appellant was initially charged with intentionally or knowingly violating the terms of
a protective order issued under Chapter 85 of the Texas Family Code. The violation
occurred, according to the indictment, through his intentionally or knowingly committing
family violence against Lakesha Matthews (his wife) by assaulting her on or about May 10,
2008. According to appellant, the act in which he engaged on May 10, 2008, was too
vague to constitute an assault. That act involved his threatening to âgetâ Lakesha. The
utterance was made through the window of his car as he drove it next to hers early that
morning. 
Â Â Â Â Â Â Â Â Â Â According to the record, the protective order was issued in March of 2008 and
remained effective until March of 2009. Between the date of its issuance and through May
10, 2008, appellant had not only told Lakesha that he was going to âgetâ her, he had also
rammed his car into hers on May 6, 2008, while she was driving it. So too had he entered
Lakeshaâs car in April of 2008, bit her finger, made it bleed, and sat on her as he drove the
vehicle across a park. Each of those instances happened after the issuance of the
protective order and on or before May 10, 2008. And, because the indictment was not
written in such a way as to restrict the assault to any one of those events, the record
contains more than some evidence illustrating that appellant assaulted Lakesha on or
before May 10, 2008, in violation of the protective order.


 And, the juryâs verdict to that
effect is supported by more than weak evidence, is not contradicted by the great weight of
the evidence, and is manifestly just. Because the conviction is supported by both legally
and factually sufficient evidence, we overrule the issue.
Â Â Â Â Â Â Â Â Â Â Arson
Â Â Â Â Â Â Â Â Â Â Next, appellant attacks the sufficiency of the evidence to prove he committed arson. 
That is, he does not contest the evidence of a fire being started in a rear bedroom of the
house. He simply suggests that the evidence fails to show that he started it. He believes
this to be so since the testimony uttered by the only witness that saw him both contradicted
that of the fire investigator and came from someone who disliked him. We overrule this
issue as well.
Â Â Â Â Â Â Â Â Â Â The witness in question was Lakeshaâs daughter, who happened to be appellantâs
step-child. She testified to seeing appellant return to the house on the morning of May 10,
2008, after he said he would âgetâ Lakesha, hearing breaking glass, seeing some cloth-like
material that was ablaze enter the rear bedroom through the window, seeing appellant at
the rear window of the bedroom in which the fire started, and then seeing him run out of
the back yard. Admittedly, portions of her testimony about what in the bedroom first ignited
differed from that of the fire investigator who testified. So too did the investigator indicate
that he believed the rear bedroom window was intact during the blaze. Yet, neither of
those matters dealt with the identity of who started the fire. That is, the fire chiefâs
testimony did not indicate that someone other than appellant started it. Moreover, pictures
of the rear window actually suggest that it was broken since all that remained was a
burned, framed opening without glass. 
Â Â Â Â Â Â Â Â Â Â As for the likelihood that the witness disliked appellant, that matter simply created
credibility issues, as did the purported contradictions mentioned above. And, since it fell
to the jury to weigh and resolve them, it could choose whether to believe the step-child
when she identified appellant as the one who set the fire. See Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating that it falls within the province of the jury
to resolve credibility issues). Finally, the step-childâs testimony, if believed by the fact
finder, was more than sufficient for a rational trier of fact to believe beyond a reasonable
doubt that appellant started the fire with intent to destroy or damage the habitation. See
Tex. Penal Code Ann. Â§28.02(a)(2)(A) (Vernon Supp. 2009) (stating that a person commits
arson if the person starts a fire, regardless of whether the fire continues after ignition, or
causes an explosion with intent to destroy or damage a habitation knowing that it was
within the limits of an incorporated city or town). And, we cannot say that any
contradictions in the evidence regarding tangential issues, the witnessâ supposed bias, or
even testimony from appellantâs mother suggesting that appellant was home undermines
in any way our confidence in the verdict. 
Â Â Â Â Â Â Â Â Â Â Accordingly, the judgments of the trial court are affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice 
Â 
Do not publish. 



ibility
under the business records exception. Appellant objected again on the basis that the
State did not carry its burden to prove up the business records exception. Jail records are
generally admissible under the business records exception to the hearsay rule. Jackson
v. State, 822 S.W.2d 18, 30-31 (Tex. Crim. App. 1990), cert. denied, 509 U.S. 921, 113
S.Ct. 3034, 125 L.Ed.2d 722 (1993) (holding records were admissible because they were
made by one with personal knowledge at or near the time of some concrete event in the
regular course of business). 

 In this instance, appellant did not specifically object on the basis that the records
were untrustworthy because the jailers were officers of the State, and the context of the
exchange with the trial court does not reveal that the court understood that as the basis
of appellant's objection. An objection must be made with sufficient specificity to apprize
the trial court of the specific ground of the complaint, unless that ground is apparent from
the context. Tex. R. App. P. 33.1(a)(1); Aguilar v. State, 26 S.W.3d 901, 905-06 (Tex.
Crim. App. 2000). Appellant's general objection at trial does not comport with the rule. 
Consequently, he failed to preserve the complaint for purposes of appeal. 

 Accordingly, the judgment of the trial court is affirmed.

 

 Per Curiam



Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002).
2. Indeed, the record clearly indicates that he had the opportunity to retreat. Appellant himself
confessed that after Brian placed his hand in his pocket, appellant left the immediate scene of the fracas and
entered his house (to obtain a weapon).