# BELL *v.* OHIO

No. 76–6513.   Argued January 17, 1978—Decided July 3, 1978

BURGER, C. J., announced the Court's judgment and delivered an opinion, in Part I of which STEWART, WHITE, BLACKMUN, POWELL, and STEVENS, JJ., joined, and in Part II of which STEWART, POWELL, and STEVENS, JJ., joined. BLACKMUN, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 643. MARSHALL, J., filed an opinion concurring in the judgment, *post*, p. 643. WHITE, J., filed an opinion concurring in part, concurring in the judgment, and dissenting in part, *ante*, p. 621. REHNQUIST, J., filed a dissenting statement, *post*, p. 644. BRENNAN, J., took no part in the consideration or decision of the case.

*H. Fred Hoefle* argued the cause for petitioner. With him on the briefs were *Jack Greenberg, James M. Nabrit III, Joel Berger, David E. Kendall,* and *Anthony G. Amsterdam.*

*Leonard Kirschner* argued the cause for respondent. With him on the brief were *Simon L. Leis, Jr., Fred J. Cartolano, William P. Whalen, Jr.,* and *Claude N. Crowe.**

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court with respect to the facts of the case and the proceedings below (Part I), together with an opinion (Part II), in which MR. JUSTICE STEWART, MR. JUSTICE POWELL, and MR. JUSTICE STEVENS joined, on the constitutionality of the statute under which petitioner was sentenced to death, and announced the judgment of the Court.

We granted certiorari in this case to consider whether the imposition of the death penalty upon Willie Lee Bell pursuant to Ohio Rev. Code Ann. §§ 2929.01–2929.04 (1975) violated the Eighth and Fourteenth Amendments. 433 U. S. 907 (1977).

---

*Briefs of *amici curiae* were filed by *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, and *William E. James,* Senior Assistant Attorney General, for the State of California; and by *Lawrence Herman, Nelson G. Karl,* and *Robert P. App* for the American Civil Liberties Union of Ohio Foundation, Inc.

## I

Bell was convicted of aggravated murder with the specification that the murder occurred in the course of a kidnaping. He was sentenced to death.

On October 16, 1974, Bell, who was then 16 years old, met a friend, Samuel Hall, who was then 18, at a youth center in Cincinnati, Ohio. They left the center and went to Hall's home where Hall borrowed a car and proceeded to drive Bell around the area. They followed a car driven by 64-year-old Julius Graber into a parking garage, and Hall, armed with a "sawed off" shotgun, forced Graber to surrender his car keys. Graber was placed, unharmed, into the trunk of his own car. Hall then drove Graber's car and Bell followed in Hall's car to the latter's home. There, Bell got into Graber's car with Hall and, following Hall's directions, drove to a nearby cemetery.

A resident of an apartment near the cemetery saw Graber's car parked on the service road of the cemetery with its parking lights on. He heard two car doors close and then a voice screaming, "Don't shoot me, don't shoot me," followed by two shots. He saw someone return to Graber's car and slide from the passenger's seat into the driver's seat. After observing Graber's car proceed away—with lights off—he called the police.

The police found Graber lying face down in the cemetery with a massive wound on the back of his head and another on his right cheek. He died en route to the hospital.

Although Bell did not testify at his trial, he gave his version of the killing to the police after his arrest in a statement that was recorded and introduced at trial. Bell denied any intention to participate in a killing. He said that after he and Hall had parked in the cemetery, he had asked Hall what they were going to do next, and that Hall had replied: "We'll see. Give me the keys." Hall then, according to Bell, released Graber from the trunk and marched him into a forested area to the rear of the cemetery out of Bell's sight. Bell then heard Graber

pleading for his life and heard a gunshot. According to Bell, Hall then came back to the car, reloaded the gun, and returned to the wooded area. Bell said he heard a second shot and Hall returned to the car and drove to Dayton, where they spent the night with friends of Hall.

The next day, with Bell driving Graber's car, Bell and Hall stopped at a service station in Dayton. Hall used the shotgun to obtain the keys to the attendant's car, and forced the attendant into the trunk. Hall then drove the attendant's car away from the station with Bell following in Graber's car. A patrolman stopped the car that Hall was driving for a defective muffler and discovered the attendant in the trunk. Bell drove past Hall and the officer and returned to Cincinnati where he abandoned Graber's car.

After his arrest and indictment, Bell waived his right to a trial by jury and requested a trial by a three-judge panel. The panel unanimously found him guilty of aggravated murder and of the specification that the murder occurred in the course of a kidnaping. That offense required the death penalty under Ohio Rev. Code Ann. §§ 2929.03, 2929.04 (1975), which is set forth in the Appendix to our opinion in *Lockett* v. *Ohio, ante,* p. 609, decided today.

Pursuant to Ohio law, the panel ordered a presentence investigation and psychiatric examination of Bell. The psychiatrists' report was directed specifically at the three mitigating factors and concluded that none of them were present. It also noted, however, that Bell claimed not to have been aware of what Hall was doing when he shot Graber.

The presentence report contained detailed information about the offense and about Bell's background, intelligence, prior offenses, character, and habits. It noted that Hall had accused Bell of actually firing the shotgun at Graber. In addition to describing Bell as having "low average or dull normal intellectual capability," it noted that Bell had been cited in juvenile court for a series of prior offenses and had allegedly been using mescaline on the night of the offense.

The three-judge panel permitted both sides the opportunity to introduce evidence and make arguments regarding the proper penalty. Bell testified that he had been under the influence of drugs virtually every day for three years prior to his arrest and on the night of the killing. He also said that he had viewed Hall as a "big brother" and had followed Hall's instructions because he had been "scared." Several of Bell's teachers testified that Bell had a drug problem and was emotionally unstable and immature for his age.

The defense argued that Bell had acted out of fear and coercion and that the offense was due to Bell's mental deficiency. In support of his contention that Bell was mentally deficient, defense counsel argued that Bell's minority established mental deficiency as a matter of law; he also argued that Bell was mentally deficient compared to other teenagers because of his drug problem and emotional instability and that Bell's mental deficiency contributed to his passive part in the crime.

Prior to sentencing, Bell moved that the Ohio death penalty be declared unconstitutional under the Eighth and Fourteenth Amendments, contending that the Ohio death penalty statute, which had been enacted after *Furman* v. *Georgia*, 408 U. S. 238 (1972), severely limited the factors that would support an argument for mercy. Bell contended that his youth, the fact that he cooperated with the police, and the lack of proof that he had participated in the actual killing strongly supported an argument for a penalty less than death in this case. He also contended that Ohio's post-*Furman* death penalty statute precluded him from requesting a lesser sentence on the basis of those factors.

After considering the presentence and psychiatric reports as well as other evidence and the arguments of counsel, the panel concluded that none of the mitigating circumstances defined by the Ohio statute had been established. Accordingly, Bell was sentenced to death.

In the Ohio Supreme Court, Bell unsuccessfully renewed his

contention that the Ohio death penalty violated the Eighth and Fourteenth Amendments. He also contended, among other things, that the evidence was insufficient to sustain his conviction for aggravated murder because there was no proof that he had intended to kill or that he had aided and abetted Hall with the intent that Graber be killed. That court rejected these arguments and held that the evidence that Bell had aided and abetted was sufficient to sustain the conviction because, under Ohio law, an aider and abettor could be prosecuted and punished as if he were the principal offender. Alternatively, the court concluded that the trial panel might have reasonably concluded that Bell either committed or actively assisted in the murder.

## II

Bell contends that the Ohio death penalty statute violated his rights under the Eighth and Fourteenth Amendments because it prevented the sentencing judges from considering the particular circumstances of his crime and aspects of his character and record as mitigating factors. For the reasons stated in Part III of our opinion in *Lockett* v. *Ohio, ante,* at 597–609, we have concluded that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers." *Ante,* at 604. We also concluded that "[t]he Ohio death penalty statute does not permit the type of individualized consideration of mitigating factors," *ante,* at 606, that is required by the Eighth and Fourteenth Amendments. We therefore agree with Bell's contention.*

---

*In view of our conclusion that Bell's death sentence cannot stand due to the Ohio statute's limits on the consideration of mitigating circumstances, we do not address (a) Bell's contention that the death penalty is disproportionate as applied in this case or (b) his contentions that the Ohio capital sentencing procedure violates the Eighth and Fourteenth

Accordingly, the judgment of the Ohio Supreme Court is reversed to the extent that it upholds the imposition of the death penalty, and the case is remanded for further proceedings.

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

[For opinion of MR. JUSTICE WHITE, concurring in part, dissenting in part, and concurring in the judgment, see *ante*, p. 621.]

MR. JUSTICE BLACKMUN, concurring in part and concurring in the judgment.

I join Part I of the Court's opinion and concur in the judgment. In accord with my views stated separately in *Lockett* v. *Ohio, ante,* p. 613, I would reverse the judgment of the Ohio Supreme Court insofar as it upheld the imposition of the death penalty on petitioner Bell. Petitioner was charged, *inter alia,* as an aider and abettor in the murder of Julius Graber, and the trial court's judgment was sustained on that basis by the Ohio Supreme Court. 48 Ohio St. 2d 270, 278, 358 N. E. 2d 556, 563 (1976). Accordingly, I would find the Ohio capital penalty statute deficient in failing to allow consideration of the degree of petitioner's involvement, and the character of his *mens rea,* in the crime.

MR. JUSTICE MARSHALL, concurring in the judgment.

I continue to believe that the death penalty is, under all circumstances, a cruel and unusual punishment prohibited by

---

Amendments because of an alleged lack of meaningful appellate review, because the jury does not participate in sentencing, and because the defendant must bear the risk of nonpersuasion as to the existence of mitigating factors. Nor do we reach Bell's contention that the procedure under which he was tried and sentenced infringed his rights under the Sixth and Fourteenth Amendments. Our grant of certiorari in this case was limited to Eighth and Fourteenth Amendment issues. See 433 U. S. 907 (1977).

the Eighth and Fourteenth Amendments, *Furman* v. *Georgia,* 408 U. S. 238, 314–374 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia,* 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting), and thus disagree with the Court's assumption to the contrary. See *Lockett* v. *Ohio, ante,* p. 619 (MARSHALL, J., concurring in judgment). I join in the Court's judgment insofar as it requires that petitioner's death sentence be vacated.

MR. JUSTICE REHNQUIST, dissenting.

For the reasons stated in my concurring and dissenting opinion in *Lockett* v. *Ohio, ante,* p. 628, I would affirm the judgment of the Supreme Court of Ohio in this case. I therefore dissent from the Court's judgment reversing it.