**Ex parte G.W. GREEN, Applicant.**

**Nos. 6496–02, 6496–03.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 25, 1991.

Cynthia B. Lloyd, Houston, for appellant.

Peter C. Speers, III, Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

CLINTON, Judge, dissenting to denial of application.

Applicant, concededly not the trigger-man, was convicted of capital murder and sentenced to death essentially on testimony of a twelve year old witness that shortly after an armed intruder confronted her and her mother in an upstairs bedroom, threw a blanket over them and then ran downstairs, she heard a voice call out, "Shoot him. Shoot him," coupled with testimony from her mother that after the same intruder later shot and killed her husband, one of his three confederates with a "lisp-like" "speech impediment" said: "Kill them. Kill them. Aren't you going to kill them?" *Green v. State*, 682 S.W.2d 271, at 283–284, 288–289 (Tex.Cr.App.1984); opinion concurring in part and dissenting in part, at 297–299.[1]

The Supreme Court denied certiorari. *Green v. Texas*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985).[2] After our mandate issued, there followed a series of

---

1. The Court affirmed the judgment and sentence in a plurality opinion of four judges; two concurred in result without opinion; three dissented to upholding the death sentence. *Ibid.*

A unanimous Court had earlier affirmed the judgment and sentence of death in the case of the actual triggerman, largely on the strength of his own confession. *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Cr.App.1979), cert. denied 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980). Part of the confession is paraphrased in the opinion at 325, according to note 2, and another bit is directly quoted at 327.

Although the judge of the convicting court in the instant cause ordered the district clerk to include it in the transcript (Tr. 92), what purports to be a copy of the confession given by Starvaggi does not contain the accounts paraphrased and quoted in the opinion. See Tr. 104–106. Attached to applicant's supplemental brief on original submission, however, is a complete copy of that confession.

One is constrained to observe though that in his purported confession Starvaggi said with respect to mother and daughter:

"We told the woman that her husband was dead & that we never meant for anything like that to happen & and that we were sorry. I think *Glen [Martin] was the one who said something about killing them* and I said I didn't want nothing to do with anything else & to let's just get out."

*Id.,* at 106. (All emphasis here and throughout is added by the writer unless otherwise indicated.)

2. Applicant had challenged constitutionality of the special issue scheme in Article 37.071, V.A.C.C.P., in two separate grounds: twenty six, that the questions "improperly allow the ... death penalty under the law of parties of a non-trigger co-defendant ...;" twenty seven, that *"[it does not] allow the jury itself to pass on the issue of life or death and does not allow for the independent decision of the jury of the issue of punishment as provided for under the constitutions of Texas and the United States,"* Brief at 7–8; he relied, in part, on *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), *id.,* at 25 (a companion case following Part III of *Lockett v. Ohio*, 438 U.S. 586, at 597–609, 98 S.Ct. 2954 at 2960–2967, 57 L.Ed.2d 973 (1978)). In ground twenty eight he contended the jury answers were "contrary to the evidence."

In a supplemental brief applicant submitted additional grounds to challenge his conviction and penalty, e.g., points V and VI, to the effect that the State had withheld from discovery the confession of Starvaggi containing admissions that in killing deceased ("[T]he man was laying on the floor. [After a while I got] my senses straight & realized what I had done.... [I] went ahead & killed him to keep him from suffering."), Starvaggi acted on his own separate and distinct impulses, thus mitigating, if not exculpating, applicant's criminal responsibility for capital murder of deceased. Supplemental Brief at 2–3, 7–9.

The plurality addressed only the first and third grounds in original brief, see *ante,* and then in a sufficiency context; it pretermitted any consideration of constitutional claims. See *Green,* supra, at 286–290. The plurality did summarize evidence adduced on punishment, however, to conclude it "sufficient for the jury to have found that the mitigating factors introduced by appellant did not outweigh the aggravating factors...." *Id.,* at 289–290. Also examining the evidence, the dissent found it insufficient with respect to special issues one and two. *Id.,* at 297 ff.

Applicant timely filed a motion for rehearing contesting certain particulars in the opinion on original submission, and also seeking rulings on issues presented in his supplemental brief. The Court denied the motion without written opinion.

In his petition for writ of certiorari, applicant represented that in grounds *twenty eight* and *twenty nine* he presented and this Court rejected his contentions that the jury's findings in response to special issues were "contrary to the evidence and their findings ... violat[ed] his Eighth and Fourteenth Amendment rights against cruel and unusual punishment and due process of law, pursuant to *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398

postconviction events tracked in the margin.[3]

Therefore, pending before this Court are, technically speaking, two applications for

(1980)." Concomitantly, he asserted that one reason to grant certiorari was to consider whether Article 37.071, V.A.C.C.P., as applied, is "too broad and vague allowing the jury to assess the death penalty in an arbitrary and capricious manner without proper consideration of mitigating factors in violation of the Eighth and Fourteenth Amendments and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)." Petition, at 11, 12.

Presumably unpersuaded that such federal questions had been actually decided below, the Supreme Court denied certiorari on March 4, 1985. *Green v. Texas,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985).

3. On April 26, 1985, the judge of the convicting court signed and ordered entered a Sentence of Death after Mandate and issued a Death Warrant, commanding the execution of applicant before the hour of sunrise on May 29, 1985. On May 17, 1985, applicant filed his petition for writ of habeas corpus and an application for stay of execution. *Inter alia,* applicant alleged as one ground for relief, *viz:*

"23. Petitioner was further harmed by the unconstitutional application of Article 37.071, Texas Code of Criminal Procedure, in allowing the jury to assess the death penalty in an arbitrary and capricious manner without proper consideration of mitigating factors, in violation of Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights[.]"

May 22, 1985, the State filed its answer urging his contentions were without merit, there were no unresolved issues of fact, and prayed for a finding that hearing was unnecessary and an order transmitting appropriate records to this Court with a recommendation that relief be denied; contemporaneously, *ex parte* and summarily, the judge signed orders respectively granting the relief prayed for by the State and denying a stay of execution.

The next day, May 23, 1985, applicant filed his Petition for Writ of Habeas Corpus by a Person in State Custody Pending Exhaustion of State Remedies, praying for a stay of execution and other relief. May 24, 1985, the United States District Court for the Southern District of Texas, Houston Division, stayed execution of applicant and ordered him to file a memorandum of law within twenty days.

The Clerk of this Court received the transcript of habeas corpus proceedings in Writ No. 6,496 on May 28, 1985—just hours before applicant was scheduled for execution. Under rules then extant, see former rule 7, staff completed processing the application on or about June 3, 1985. On June 26, 1985, the United States District Court granted applicant an enlargement of time in which to file a memorandum in support

habeas corpus relief, *viz:* the initial one filed here May 28, 1985; the last amended application filed February 6, 1991.[4] Because all complaints in the former—except

of his habeas corpus application pending final action by this Court.

On April 17, 1986, the United States District Court entered an order directing the parties to file a "status report" within seven days. We are informed by the district attorney in his motion to dismiss or expedite that the Attorney General of Texas reported that the application was still pending before this Court, and requested "the briefing schedule be reinstated."

However, on May 20, 1986, applicant filed in the convicting court his Subsequent Application for Writ of Habeas Corpus in which he alleged an additional ground for relief, towit: ineffective assistance of trial counsel. The State immediately responded with the suggestion that counsel "should be given the opportunity to answer the allegations against him." Accordingly, on June 5, 1986, the judge of the convicting court ordered a hearing consisting only of an affidavit from trial counsel. Counsel submitted his affidavit, and a copy was delivered to the judge July 15, 1986. Deeming it "inadequate to allow accurate findings of fact," on January 12, 1987, the judge ordered counsel to "answer under oath" certain questions on or before February 1, 1987. Counsel complied, and his supplemental affidavit was filed January 21, 1987.

By order signed August 30, 1989, the judge set the cause for an evidentiary hearing on the merits for September 14, 1989. Applicant sought and on September 11, 1989, obtained a continuance until October 4, 1989; on that day the cause was reset for November 16, 1989. However, for reasons *de hors* the record a hearing on the subsequent application was not held then—or ever.

October 10, 1990, applicant filed his First Amended Application for Writ of Habeas Corpus. Simultaneously, he sought and obtained leave of court to substitute new counsel who signed the amended application for counsel who had previously handled the matter. The court denied a motion for continuance, and held a hearing on the amended application the next day. Applicant filed a post hearing brief on November 2, 1990; the State submitted proposed findings of fact and conclusions of law on November 15; the judge made and filed findings of facts and conclusions of law December 4, 1990, and ordered the clerk of court to prepare and transmit to this Court a transcript of "all the papers in this cause," specifying certain matters to be included.

The Clerk of this Court filed the transcript and statement of facts in writ number 6,496–03 on February 6, 1991.

4. The amended application reiterates allegations of ineffective assistance of trial counsel, and raises two additional claims, *viz:*

the claim in paragraph 23, see n. 3, *ante*—were found to be without merit on direct appeal, we should treat the paragraph 23 claim as being subsumed in the claim in paragraph B of the latter, see n. 4, *ante,* and, accordingly, not file and set for submission the application in writ number 6,496–02. Tex.R.App.Pro.Rule 213(a).

As to writ number 6,496–03, for reasons given in the margin, we need not file and set the claims in paragraphs A and C. *Ibid.*[5]

However, the application in writ number 6,496–03 should be filed and set for submission on the claim made in paragraph B. *Id.,* Rule 213(b).[6] As thus limited, the cause would be docketed and heard "as though originally presented to the court or as an appeal." Article 11.07, § 3, V.A.C.C.P.; Rule 213(b); Rule 203.[7]

"B. Petitioner further alleges that his confinement is unlawful in violation of his right against cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States as construed by *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) because the Texas capital sentencing procedure [under] Art. 37.071 ... did not allow the jury to consider and act upon mitigating evidence proferred [sic] by Petitioner as a basis for a sentence less than death, in violation of the Sixth, Eighth and Fourteenth Amendments. Petitioner reargues this same point as previously alleged on direct appeal in light of the fact that new cases having been decided allowing petitioner to urge this ground on collateral review. [citations and references to prior contention omitted].

C. Petitioner further alleges that special issue No. 2 does not take into consideration the requirements of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) with respect to the law of parties.
\* \* \* \*
In addition, the special issues in article 37.-071 fail to give meaning to other mitigating evidence within the meaning of *Penry* [.]"
Tr. 48–50.

5. As to paragraph A, based on testimony of trial counsel and other evidence adduced during hearing on writ number 6,496–03, the convicting court made findings of fact and conclusions of law adverse to applicant. We believe those findings of facts are supported by the record and they in turn dictate the conclusions of law, such that relief on that ground would be denied.

The claim made in paragraph C is that special issue two "does not take into consideration the requirements of *Enmund v. Florida* ... with respect to the law of parties." In that regard, applicant excerpts certain statements made in the opinion on original submission made in the course of responding to a contention by the State that the law of parties is applicable to special issue one, *viz:* "[T]he death penalty may be imposed only by examination of the mitigating and aggravating circumstances concerning the *individual* defendant. [citations omitted]. This examination is performed in Texas through the special issues." *Green,* supra, at 287 (em-

phasis in original). Then applicant alleges that "the three special issues ... as applied to the law of parties is another instance 'where the Texas capital sentencing procedure 'is indeed constitutionally infirm ... [where] no instruction is given to the jury to allow it to give effect to the evidence.' *Clark v. Collins* [No. H–88–1296 (S.D.Tex.1990) ] at 31." Tr. 49–50. Yet, the Court held in no uncertain terms that "the law of parties may not be applied to the three special issues under Art. 37.071(b)"—and it did not. *Green,* at 287–288.

The charge on punishment does not expressly or implicitly suggest that in answering the special issues the jury is to consider and apply the law of parties. It does instruct that the jury may consider all *evidence* submitted in the "first part of this case ... to determine the guilt or innocence of the Defendant." Trial Tr. 105–106. We are persuaded, as was the convicting court, "There is no reasonable likelihood that the jury could have interpreted Special Issue Two, or any of the other Special Issues, as allowing an affirmative answer based on the conduct of Applicant's co-defendants." Tr. 81.

6. As to paragraph B, the convicting court found, *inter alia,* applicant failed to object that the special issues would not permit the jury to consider and give effect to mitigating evidence, and failed to request a special instruction to remedy such defect. The Court has since held that none is necessary to preserve error. *Black v. State,* 816 S.W.2d 350 (Tex.Cr.App.1991) (Campbell, J., concurring). We express no opinion as to other findings of fact and conclusions of law bearing on the merits of applicant's claim in paragraph B.

7. In this connection, the statement of facts reporting hearing proceedings of October 11, 1990, reflects the following colloquies and understandings:

THE COURT: [I]t appears to me that the things you have added to this case are really all question of law that are going to be decided by the record that was generated during the trial of this case.

[APPLICANT]: Okay. Well the other—

THE COURT: I don't see any other matter that—where we need to hear evidence other than the one about ineffective assistance of

Because the majority has lost its way in the *Penry* field of law, it is unable to recognize matters in mitigation; thus it cannot bring the Court to consider germane *Penry* evidence presented in this cause, *viz:* applicant's background, character and circumstances of the offense.

To the injustice being perpetrated here, I respectfully dissent.

MALONEY, J., joins.

counsel. I don't see any fact issues that need to be developed.

[APPLICANT]: The other problem it is not pled, I just noticed. * * * *

THE COURT: Okay. I believe we're here and that the evidentiary matters that we're going to develop this morning, y'all correct me if I'm wrong, are the allegations of ineffective assistance of counsel, is that correct?

[THE STATE]: Yes. My understanding is it's the only evidentiary matters that needs [sic] to be developed in this case.

THE COURT: Right. Even with the amended motion, those are legal matters that appears to me can be answered direct from the records.

[THE STATE]: I don't think there's any question about that, Your Honor.

THE COURT: All right. You may proceed.

[APPLICANT]: I'll call as my first witness. . . .

Therefore, the parties would be well advised to refer to and draw from the record made at trial.