Defendant-appellant, Michael Holt, was adjudicated a delinquent child and sentenced to institutionalization with the Department of Youth Services ("DYS") for a minimum period of twelve months and a maximum period of until he reaches the age of twenty-one. Appellant appeals the denial of a motion to suppress on the grounds that appellant's confession was involuntary, and also his sentence to DYS. We affirm the decision of the trial court.
Based on accusations that appellant, then age fourteen, had been involved in sexual conduct with a five-year-old victim, appellant was brought to the police station by his mother. Detective Sherry Marcum testified about her interview of appellant. Marcum described the procedure she utilized to inform appellant of his constitutional rights before questioning:
 I follow the same procedure with everyone I Mirandize. I give them a Miranda card and I also have a Miranda card. And, I make sure, I ask them if they can read because, and I don't mean to be insulting. But some people are not literate. And once they say "Yes." I tell them to go ahead and follow along with me with the Miranda card. I read it orally and then they follow along. And, after I'm done reading the Miranda card, I ask them if they have any questions and then I ask them to sign the opposite side. They sign their name. And then, I also sign my name as a witness.
Appellant told Marcum that he could read. After Marcum read appellant his Miranda rights, he was asked if he had any questions. He did not. Appellant then signed a card acknowledging he was aware of his rights and was waiving them in order to speak with the police.
During the interview, appellant orally confessed to sexual conduct with the victim in this case. Marcum then put appellant's oral statements into writing. Marcum testified that she used appellant's words and did not summarize his confession. Marcum testified that she "typed [the confession] with him sitting there. And it's * * * a review of what he told me." She would tell him, "Now you told me this" and appellant would respond affirmatively. Appellant made five corrections to the written confession and each one was initialed by appellant. In addition, appellant added three sentences to the end of the confession.
William Valerius, Director of Pupil Personnel for the Hamilton City Schools, testified that he was responsible for "all the special education programs in the district." Valerius testified that appellant was in the learning disabled program and, based on testing, was recommended for the developmentally handicapped program for the 1998-99 school year. Valerius testified that a learning disability generally indicates a gap between a student's intelligence quotient (which may be average to above average) and his classroom performance. By contrast, "developmentally handicapped" means "low, average intelligence." Valerius explained that "[g]enerally, we're looking at a functional type of curriculum." Based on testing, appellant placed in the bottom one percent of educational ability among his peers. Valerius testified that "[w]ritten communications is a definite deficit area."
Appellant participated in the ninth-grade proficiency test and passed the reading and writing portions "with modifications." Although the questions remain the same, the modifications include extra time and a teacher reading the entire test to the student. Valerius indicated that appellant's oral communications are stronger than his written skills. Valerius agreed that "if you explain something to him orally, he can comprehend it." For example, Valerius believed that appellant could understand his testimony and was "aware of his academic needs." Valerius testified that he believed appellant comprehended "what silent means."
Jana Reynolds, previously employed as a learning disability teacher for the Hamilton City Schools, testified about her experience as appellant's teacher for three years. Appellant was in a "self-contained" class that included all his reading and writing classes. Appellant testified that appellant read on a second-grade level. Reynolds testified that appellant would not be able to comprehend many of the terms in the Miranda warning without explanation. In addition, Reynolds opined that appellant was not capable of giving an oral statement like the typed confession. Reynolds stated that "[appellant] doesn't talk like that," but would understand the words in the written confession.
After the hearing, the trial court overruled the motion to suppress. Subsequently, appellant pled "true" to the charge of being a delinquent child, stemming from his sexual conduct with the minor victim. Appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLEE WHEN IT OVERRULED HIS MOTION TO SUPPRESS.
A waiver of Miranda rights must be made "voluntarily, knowingly and intelligently." In re Smalley (1989), 62 Ohio App.3d 435,445, citing Miranda v. Arizona (1966), 384 U.S. 436,475, 86 S.Ct. 1602, 1608. "A reviewing court is required to consider the totality of the circumstances to determine whether (1) the waiver was a voluntary exercise of will rather than the product of intimidation or coercion; and (2) the defendant was fully aware of the nature of the right and the consequences of his decision to waive it." Smalley at 445, citing Moran v.Burbine (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 1141. "Waivers of minors must be scrutinized closely since the validity of the waiver is affected by the factors of age, emotional stability and mental capacity." Smalley at 445, citing State v. Bell
(1976), 48 Ohio St.2d 270, 277, sentence vacated (1978), 438 U.S. 637,98 S.Ct. 2977.
The testimony does establish that appellant's written skills are poor for a student of his age. However, when given the ninth-grade proficiency test, appellant passed the reading and writing test with the questions being read to him. The Miranda
instructions were read to appellant with the writing in front of him. He did not ask any questions about the instructions or indicate that he was confused. The testimony indicates that he is capable of understanding the meaning of "silent." Also, in terms of appellant's ability to read and write, we note that appellant read the written confession and then asked to add three sentences to the statement. This act demonstrates an understanding of the material in the confession. Based on the totality of the circumstances, we find the confession was voluntary.[1] Thus, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT CONSIDER THE LEAST RESTRICTIVE ALTERNATIVE FOR PURPOSES OF PUNISHMENT.
In his second assignment of error, appellant argues that the trial court abused its discretion by committing appellant to the DYS, instead of the Butler County Rehabilitation Center (the "Center"). Specifically, appellant claims he was denied due process and equal protection in sentencing because he is developmentally handicapped. We disagree.
In a letter admitted into the record, Lisa Rains, Intake Coordinator with the Center, reviewed appellant's case as part of the "Intake Committee" and found "that he is not an appropriate candidate for [the Center]." Rains cited four reasons: (1) "[appellant] appears to be entrenched in criminality beyond what his record indicates"; (2) appellant was unwilling to submit to group therapy; (3) "poor attitude toward treatment"; and (4) due to his "education status," appellant appears unable to meet the demands of the program. The decision of the Intake Committee was unanimous. Jim Harris, a licensed social worker with Catholic Social Services concluded, after meeting with appellant, "it is my impression that [the Center] may not have the education and treatment course to benefit this boy. He may benefit from placement in a DYS facility."
Appellant's argument is that, by considering appellant's "educational status," appellant was denied equal protection and due process. However, the record indicates that appellant's educational status was only one of a series of factors the trial court considered. Appellant was not denied procedural due process because the trial court considered all the evidence and arguments from both parties before reaching a decision. In addition, to the extent appellant intends to raise this issue, there is no substantive due process right implicated by any aspect of appellant's argument.
As for the equal protection claim, appellant's educational status does not qualify him for any suspect class, such as race, gender or alienage. See, generally, Rotunda and Nowak, Treatise on Constitutional Law (2 Ed. 1992), Sections 18.5-18.25. Moreover, there is no fundamental right to serve a juvenile sentence with the Center as opposed to DYS. Therefore, in order to satisfy equal protection, the consideration of appellant's educational status must satisfy the rational basis test. Under the rational basis test, "similarly situated individuals [must] be treated alike unless distinguishing them bears some rational relationship to a legitimate purpose." State v. Burns (Mar. 29, 1999), Madison App. No. CA98-12-037, unreported, at 6, citingMenifee Savings v. Queen City Metro (1990), 49 Ohio St.3d 27, 29
(citation omitted). The fact that appellant would have difficulty with the rigors of the Center program, and therefore may not benefit from it, satisfies that constitutional demand. The state need not modify the program at the Center to accommodate appellant's educational status. There is no evidence that his evaluation for the Center was conducted using different criteria than that used to evaluate any other potential candidate.
Finally, the Americans with Disabilities Act, Chapter 126, Title 42, U.S. Code, the federal statute appellant cites, does not apply to this situation. Appellant has not cited any other statute in support of the "least restrictive alternative" assignment raised in his second assignment of error. The trial court's sentence was within its discretion. Accordingly, the second assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] Appellant focuses in on the fact that the trial count mentioned in its decision from the bench that Miranda rights are "blasted out on the T.V. all the time." Since the testimony did not address appellant's understanding of his rights from television in any way, we agree with appellant that this is not relevant to the inquiry of the voluntariness of the confession. However, the trial court also focused in on the procedure Marcum followed in "Mirandizing" appellant. In any event, as an issue of constitutional due process, we are reviewing the voluntariness of the confession de novo.