DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
On December 15, 1999, the Summit County Court of Common Pleas convicted Frank White ("White") of robbery, in violation of R.C 2911.02(A)(3) and aggravated robbery, in violation of R.C. 2911.01(A)(1). The trial court sentenced White to concurrent sentences: one year for the robbery and five years for the aggravated robbery. White appeals his conviction. We affirm.
 I.
At approximately 8:55 on the evening of November 17, 1998, two armed individuals wearing ski masks robbed the Thurmont House, a pizza parlor located in Akron, Ohio. One individual was wearing a Detroit Lions jacket; the other was wearing a Dallas Cowboys jacket. After viewing a surveillance video of the robbery, Detective Irvine "felt strongly" that one of the individuals was White. On December 7, 1998, two detectives from the Akron Police Department, Detective Irvine and Detective McMillan, went to Firestone High School to speak with White regarding the Thurmont House robbery.
According to school policy, White's mother, Phyllis Lewis ("Lewis") was notified. After Lewis arrived at school, the officers questioned White with his mother present. White denied involved in the Thurmont House robbery but stated that he had worn a Dallas Cowboys jacket to school that morning. Detective Irvine accompanied White to his locker. White opened his locker and gave his jacket to Detective Irvine.
On January 19, 1999, Detective Irvine returned to Firestone High School to arrest White for the robbery of a fellow student, Justin Ball ("Ball"). Ball reported to school officials that White had taken $119 from him. Detective Irvine took White to the police station for interrogation. White initially denied involvement in both robberies; however, he made statements that he was coerced by the gunman to participate in the robbery at Thurmont House.
On February 8, 1999, the Juvenile Court bound White over to the Court of Common Pleas. White was charged with robbery of Ball and aggravated robbery of Thurmont House. The cases were consolidated and set for trial. White pleaded guilty to the robbery of Ball and went to trial for the Thurmont House robbery on November 22, 1999. The jury found White guilty of aggravated robbery. The trial court convicted White of robbery and aggravated robbery and sentenced him to one year for the robbery to run concurrently to five years for the aggravated robbery.
White timely appealed to this court.
 II. Assignment of Error No. 1: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY DENYING DEFENDANT'S MOTION TO SUPPRESS HIS CUSTODIAL STATEMENTS TO POLICE.
In his first assignment of error, White argues that he did not knowingly, intelligently and voluntarily make statements to the police during the January 19, 1999 interrogation. White states that he was sixteen years old, had an I.Q. of 51, and was interrogated by three officers for over seven hours. Based on those factors he did not voluntarily waive his Miranda rights. We disagree.
In reviewing whether a confession is voluntary, we must determine (1) whether appellee voluntarily, knowingly, and intelligently waived hisMiranda rights; and (2) whether defendant's statements were voluntary. In finding that a defendant voluntarily, knowingly, and intelligently waived his Miranda rights,
 a reviewing court is required to consider the totality of the circumstances to determine whether (1) the waiver was a voluntary exercise of will rather than the product of intimidation or coercion; and (2) the defendant was fully aware of the nature of the right and the consequences of his decision to waive it.
In re Smalley (1989), 62 Ohio App.3d 435, 445, citing Moran v. Burbine
(1986), 475 U.S. 412, 421, 89 L.Ed.2d 410, 420-421. The state must prove the voluntariness of a confession by a preponderance of the evidence.State v. Hill (1992), 64 Ohio St.3d 313, 318, citing Colorado v.Connelly (1986), 479 U.S. 157, 168, 93 L.Ed.2d 473, 485.
The totality of the circumstances approach requires an inquiry into all the circumstances surrounding the interrogation. This includes "the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment and the existence of threat or inducement."In re Watson (1989), 47 Ohio St.3d 86, 89-90; see, also State v. Eley
(1996), 77 Ohio St.3d 174, 178. "Waivers by minors must be scrutinized closely since the validity of the waiver is affected by the factors ofage, emotional stability and mental capacity." Smalley,62 Ohio App.3d at 445, citing State v. Bell (1976), 48 Ohio St.2d 270, 277, sentence vacated (1978), 438 U.S. 637, 57 L.Ed.2d 1010.
As a threshold matter, "coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based." State v. Dailey (1990),53 Ohio St.3d 88, 91-92, citing Connelly, 479 U.S. at 170,93 L.Ed.2d at 486. Without police coercion, circumstances such as the defendant's minority (age) or low I.Q. do not negate the voluntariness of the confession. Dailey, 53 Ohio St.3d at 92. "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on `free choice' in any broader sense of the word."Id., citing Moran, 475 U.S. at 421, 89 L.Ed.2d at 420-421.
In the instant case, the record is devoid of any suggestion that the police officers engaged in any coercive behavior. White does not assert at any point in the proceedings that he was mistreated, deprived, or involuntarily induced into waiving his Miranda rights. The record reflects that Detective Irvine took White into custody around 8:45 a.m., White received his Miranda rights around 9:27 a.m. and he remained at the police station until approximately 3:00 p.m. Throughout the day three officers questioned White.
Although the length of the custodial interview, six hours, appears unreasonable, several officers testified that the actual interview lasted two to two and a half hours including several breaks, an hour for lunch and a trip in the police cruiser to identify a location for the police. The trial court noted that the length, intensity and frequency of the interrogation were reasonable.
At the suppression hearing, Lewis stated that she spends several days a week helping White with his homework. Lewis testified that White could read paragraphs of information, follow directions and answer questions based on the information contained in the paragraph. She stated that he was studying math, English and science with his home tutor. Lewis's testimony at the suppression hearing indicates that White was capable of understanding his constitutional rights.
Another factor the trial court considered in its examination into the totality of circumstances was White's long history of previous arrests dating back to 1993. The trial court noted that this was "a strong factor in determining voluntariness of waiver."
Under the totality of the circumstances, we find that the state has proven by a preponderance of the evidence that White's January 19, 1999 statements were voluntarily given; that White had a sufficient understanding of the Miranda rights; and that he knowing, intelligently and voluntarily waived those rights.
The first assignment of error is overruled.
 III. Assignment of Error No. 2: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY DENYING DEFENDANT'S MOTION TO SUPPRESS THE DALLAS [COWBOYS] JACKET ILLEGALLY SEIZED FROM DEFENDANT'S LOCKER AT FIRESTONE HIGH SCHOOL WITHOUT A WARRANT IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS.
White argues that the seizure of his jacket from his school locker was illegal. He asserts that Detective Irvine seized the jacket with out a warrant in violation of his Fourth Amendment rights.
The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment applies to the states by way of the Fourteenth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 654-655,6 L.Ed.2d 1081, 1090. Searches and seizures conducted without a warrant from a judge or magistrate are per se unreasonable unless they come within one of the "few specifically established and well delineated exceptions." Minnesota v. Dickerson (1993), 508 U.S. 366, 372,124 L.Ed.2d 334, 344 (internal quotation marks omitted).
A warrantless search may be justified by the consent of the subject.State v. Sneed (1992), 63 Ohio St.3d 3, 7. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "`clear and positive' evidence that the consent was `freely and voluntarily given.'" State v. Posey (1988), 40 Ohio St.3d 420, 427, quoting Bumper v. North Carolina (1968), 391 U.S. 543, 548,20 L.Ed.2d 797, 802.
The record reflects that on December 17, 1998, Detective Irvine and Detective McMillan questioned White at Firestone High School regarding the Thurmont House robbery. At the suppression hearing, Officer Irvine testified that he asked White if he owned a Dallas Cowboys jacket. White confirmed that he owned a Dallas Cowboys jacket and that it was in his locker because he had worn it to school that day. Detective Irvine stated that when he asked if he could take the jacket into evidence neither White nor his mother objected. Detective Irvine and White "walked down to the locker, [White] opened his locker, took the jacket out of the locker and handed it to me."
Lewis testified at the suppression hearing that Detective Irvine said "[w]ell, [White] you're going to have to go get that coat because I'm taking that coat into evidence." She did not object to Detective Irvine taking the coat but she did voice concern that White would not have anything to wear home on such a cold day.
On appeal, the state emphasizes the fact that neither White nor his mother objected to Detective Irvine taking the jacket. However, the state bears the burden of proving that the consent was voluntary and freely given with clear and positive evidence. Posey, 40 Ohio St.3d at 427. We find that the state failed to meet this burden because "[t]he state's burden to prove consent cannot be discharged by showing no more than acquiescence to a claim of lawful authority." State v. Taylor (1991),77 Ohio App.3d 223, 226, quoting Bumper, 391 U.S. at 548-549,20 L.Ed.2d at 802.
We next consider whether the error was harmless. Crim.R. 52(A) provides that "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to hold error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967),386 U.S. 18, 17 L.Ed.2d 705; State v. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds, (1978), 438 U.S. 910, 57 L.Ed.2d 1154. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams
(1983), 6 Ohio St.3d 281, 290.
"Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483, 485, citing Lytle, 48 Ohio St.2d at paragraph three of the syllabus. A reviewing court, therefore, when determining whether an error in the admission of evidence is harmless, must find there is no reasonable probability that the evidence may have contributed to the defendant's conviction. State v. DeMarco (1987), 31 Ohio St.3d 191, 195.
In the present case, after a review of the entire record, we find that any prejudice that may have resulted from the admission of the Dallas Cowboys jacket constitutes harmless error. Detective Irvine testified that he recognized White from the surveillance video of the Thurmont House robbery. The video showed that two individuals were involved in the robbery and that one individual was wearing a Dallas Cowboys jacket. As a security guard at Firestone High School, Detective Irvine had previous contact with White and was familiar with White's physical appearance and the fact that White often wore a Dallas Cowboys jacket. Detective Irvine also received information from other students that White was involved with the Thurmont House robbery.
Apart from the disputed evidence, White's January 19, 1999 statements constituted overwhelming evidence of his guilt. The Dallas Cowboys jacket was cumulative evidence not necessary to prove White's guilt. Having found that there is no reasonable probability that the physical evidence of the Dallas Cowboys jacket contributed to White's conviction we overrule the second assignment of error. See DeMarco,31 Ohio St.3d at 195.
 IV. Assignment of Error No. 3: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY DENYING DEFENDANT'S MOTION FOR SEPARATE TRIALS OF COUNTS OF THE INDICTMENT WHERE TRIAL TOGETHER WOULD HAVE BEEN HIGHLY PREJUDICIAL TO A FAIR TRIAL AND RESULTED IN A DENIAL OF DUE PROCESS OF LAW.
White argues in his third assignment of error that the trial court failed to sever his two robbery charges. Prior to trial, White moved the trial court, pursuant to Crim. R. 14, to sever the trials on the ground that he would be prejudiced by their joinder. The trial court denied the motion. White, however, did not renew his motion to sever either after the state rested or at the conclusion of all the evidence, and, as a result, he waived any error arising from its denial. State v. Owens (1975), 51 Ohio App.2d 132, 146.
White's fourth assignment of error is without merit and therefore it is overruled.
 V. Assignment of Error No. 4: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY DENYING DEFENDANT'S MOTION IN LIMINE AND ADMITTING "CHARACTER" EVIDENCE OF DEFENDANT AT TRIAL WHICH DID NOT FALL WITHIN ANY OF THE EXCEPTIONS PERMITTED FOR ADMISSION OF SAME UNDER OHIO REV. CODE § 2945.59 OR EVID. R. 404(A).
 Assignment of Error No. 7: TRIAL COUNSEL WAS INEFFECTIVE IN NOT RENEWING THE OBJECTION TO THE ADMISSION OF EVIDENCE REGARDING THE BALL ROBBERY.
White's fourth and seventh assignments of error are related and will be discussed together. In his fourth assignment of error, White argues that he was prejudiced by testimony of the state's witness that provided a synopsis of the Ball robbery. The trial court did not permit White to inform the jury that he had pled guilty to the Ball robbery. In his seventh assignment of error, White argues that his trial counsel was ineffective because he failed to object to the admission of this character evidence and therefore did not preserve the issue for appellate review.
The Supreme Court of Ohio has affirmed that
 [a]n order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.
State v. Grubb (1986), 28 Ohio St.3d 199, 203, quoting State v. Leslie
(1984), 14 Ohio App.3d 343, 344. When the alleged character evidence was presented at trial White's attorney failed to raise any objection to its use as character evidence. Therefore, we need not evaluate the propriety of the admission of these statements. White's fourth assignment of error is overruled.
We now turn White's seventh assignment of error that defense counsel's failure to preserve this issue for appeal rose to the level of ineffective assistance of counsel. A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. State v. Smith (1985),17 Ohio St.3d 98, 100.
At trial, Detective Irvine testified that White was a suspect in the Ball robbery. He testified that On January 8, 1999, Ball alleged that White had "pushed him up against a locker, forced him and took $119 out of his pocket." On January 19, 1999, Detective Irvine took White to the police station to conduct a custodial interview regarding the Ball and Thurmont House robberies.
We find that White has failed to demonstrate that he was prejudiced by his trial counsel's performance. The testimony relating to the Ball robbery served to give the jury a background to the events that unfolded at the police station on January 19, 1999. It cannot be said that, but for the failure to object to this testimony, the outcome of White's trial would have been different. Therefore, White has not shown ineffective assistance under Strickland and Bradley.
The seventh assignment of error is overruled.
 VI. Assignment of Error No. 5: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE AND ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION FOR SPECIAL JURY INSTRUCTIONS REGARDING CIRCUMSTANTIAL EVIDENCE AND EYEWITNESS AND POLICE TESTIMONY THEREBY DENYING DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW.
White argues that the trial court's failure to include specific jury instructions regarding circumstantial evidence was prejudicial. We disagree.
White asserts that the state presented only circumstantial evidence as to the identity of the robber. Accordingly, White requested the following jury instruction:
 where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence.
See State v. Kulig (1974), 37 Ohio St.2d 157, syllabus, overruled by,State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
The Ohio Supreme Court has defined the proper use and value of circumstantial evidence:
 [c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconciliable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required.
(Citations omitted.) Jenks, 61 Ohio St.3d at paragraph one of the syllabus. When the state relies on circumstantial evidence "there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." Id. at 273.
Circumstantial evidence and direct evidence possess the same probative value. A trier of fact may weigh all the evidence, whether direct or circumstantial, against the proof beyond a reasonable doubt standard. Circumstantial evidence may be used to prove the elements of a criminal offense. The trier of fact is free to assess the weight to be given the evidence and the witnesses' credibility.
In the present case, White's argument invites this Court to go beyond what is required by Jenks. This Court declines the invitation. The fifth assignment of error is overruled.
 VII. Assignment of Error No. 6: THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE PROSECUTION'S CASE AND AT THE CONCLUSION OF ALL THE EVIDENCE, WHERE THE STATE OF THE EVIDENCE WAS WHERE REASONABLE MINDS COULD NOT FAIL TO FIND REASONABLE DOUBT AND DEFENDANT'S CONVICTION IS NOT SUPPORTED BY THE EVIDENCE.
White argues that the state did not present sufficient evidence regarding the identity of the individual that robbed Thurmont House. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the denial of a motion for acquittal, this court must construe the evidence in a light most favorable to the state. State v. Messer (1995), 107 Ohio App.3d 51,54. A motion for judgment of acquittal is properly denied "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Gasser (1993), 89 Ohio App.3d 544, 547, quoting State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
At trial, Detective Irvine testified that he also works as an off-duty security guard at Firestone High School. In that position, he had information from students that White was involved with the Thurmont House robbery. Detective Irvine was familiar with White as a Firestone High School student and as a person from around the neighborhood. After viewing the surveillance tape, Detective Irvine "felt strongly" that White was the individual wearing the Dallas Cowboys jacket.
Several detectives testified regarding the statements White made during his custodial interview on January 19, 1999. White provided three versions of what occurred the evening of the robbery. First, he stated that he was not involved in the robbery and that he was playing video games at his cousin's house. Second, he stated that a man in a blue Chrysler forced him at gunpoint to assist in the robbery. The man held a gun to White's back, placed a mask over his face and handed him the lead pipe. Together they entered Thurmont House and the man shot his gun, took the money out of the register and left in his car. Finally, White stated that he was present the night of the robbery and was waiting to buy a pizza when he saw a man from Texas and one of White's friends commit the robbery.
White revealed several facts regarding the Thurmont House robbery known only to the police officers and the perpetrator. White knew that: 1) the robbery took place close to 9:00 p.m., 2) one individual was wearing a Detroit Lions jacket, 3) the individual in the Detroit Lions jacket shot a gun, 4) the gun was a .25 caliber and 5) the individual wearing the Detroit Lions jacket took the money out of the register.
After viewing all the evidence in a light most favorable to the prosecution, as we are required to do when considering a question of sufficiency, we conclude a rational trier of fact could have found the essential elements of aggravated robbery proven beyond a reasonable doubt. Accordingly, the trial court properly denied White's motion for acquittal and we overrule the sixth assignment of error is overruled.
 VIII.
Having overruled all seven assignments of error we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR