[Cite as *In re J.M.*, 2012-Ohio-1467.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

IN THE MATTER OF:

    J.M.

ALLEGED DELINQUENT CHILD.

CASE NO. 12-11-06

O P I N I O N

Appeal from Putnam County Common Pleas Court
Juvenile Division
Trial Court No. 2011 JG 27539

Judgment Affirmed

Date of Decision: April 2, 2012

APPEARANCES:

    *Andrew Van Horn* for Appellant

    *Jennifer L. Klausing* for Appellee

Case NO. 12-11-06

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, J.M. III (hereinafter, "Appellant"), appeals the judgment of the Putnam County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for having committed the offense of rape. On appeal, Appellant contends that the trial court erred when it allowed the eleven-year old victim to testify because she was not competent; when it failed to properly swear in a witness; when it failed to suppress Appellant's statement to the police; when his rights to due process were violated because of ineffective assistance of counsel; and, when his due process rights were violated due to the cumulative errors which occurred. For the reasons set forth below, the judgment is affirmed.

{¶2} On April 23, 2010, a complaint was filed against Appellant alleging that he was a delinquent child by reason of committing a rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult. The complaint arose from an incident that occurred in early March 2010 when Appellant, who was a fourteen-year old boy at the time, was spending the night at the home of his father ("Father") and his Father's fiancée ("Laura") in Lima, Ohio. Also present were four "stepbrothers" and "stepsisters" (Laura's children),[1] and

---

[1] Although Laura and JM's Father were not married, they had been in a long-term relationship for many years, and Laura and her children were sometimes referred to as JM's "stepmother" and "stepsiblings." Laura testified that she loved JM like her son. JM's parents were divorced, and he usually lived with his mother and stepfather in Putnam County.

four cousins (Laura and the Father were guardians of the Father's nieces and nephews), ranging in age from three to seventeen. Sometime after midnight, Laura went to check on the children and found Appellant and his stepbrother, Jordan (age 11), in the top bunk bed in the girls' room, which was against the rule that the boys and girls were not to be in each other's rooms. Laura found Jordan lying at one end of the bunk bed playing games on Appellant's Blackberry, and Appellant and his cousin, L.E. (hereinafter "Rosie"[2] or "the victim"), were lying next to each other on the other end of the bunk, under a blanket in a "spooning" position. The children were reprimanded and the boys were sent to their own room.

{¶3} The next morning, Rosie, who was ten years old at the time, disclosed that Appellant had "fingered" her by putting his finger inside her vagina and that it had hurt. Laura took Rosie to the hospital where she was examined by a SANE nurse, and a small, curved abrasion, consistent with a fingernail scratch, was discovered on Rosie's labia minora, inside her vagina.

{¶4} The matter was reported to the authorities and Appellant was taken to the sheriff's office for questioning by Investigator Brett Rider. Appellant told Investigator Rider that he, Jordan, and Rosie had been playing a game and his finger accidentally went "inside" Rosie when he was helping lift her up to the top

---

[2] "Rosie" is not the victim's real name; it is a nick-name that was used.

bunk. Upon further questioning, Appellant continued to maintain that it was an accident, but admitted that he became confused and may have left his finger inside of her for a few seconds longer.

{¶5} A two-day trial was held before the Allen County Juvenile Court on March 2 and 9, 2011. The juvenile judge heard testimony from Laura, Rosie, Gayle Cheney (the SANE nurse who examined Rosie), Dr. Cunningham (the director of the Kids Clinic at Lima Memorial Hospital), Investigator Rider, Jordan, the Father, and Appellant. The parties also entered several exhibits into evidence, including records from Rosie's hospital examinations and a copy of the recording of Investigator Rider's interview with Appellant.

{¶6} The juvenile court adjudicated Appellant a delinquent child on March 22, 2011, and transferred jurisdiction to the Putnam County Juvenile Court for disposition. A dispositional hearing was held on May 4, 2011. The court committed Appellant to the Department of Youth Services for a minimum term of three years, to age twenty-one, with the commitment suspended on the condition that Appellant successfully completes the Juvenile Residential Center Program. Appellant was also placed on probation; ordered to attend counseling; prohibited from having unsupervised contact with any juveniles, with the exception of his sister; and not permitted to have unsupervised access to the Internet.

**{¶7}** It is from this judgment that Appellant now brings this appeal, raising the following five assignments of error for our review.

### First Assignment of Error

**The trier of fact erred by allowing the 10 year old victim to testify because she was not competent.**

### Second Assignment of Error

**The trial court erred when they failed to swear a witness in properly, therefore allowing unsworn testimony which was used to prove the elements of the State's case.**

### Third Assignment of Error

**The trial court erred when it did not suppress the Appellant's statements to police.**

### Fourth Assignment of Error

**The Appellant's right to due process was violated by trial counsel's ineffective methods and deficient performance.**

### Fifth Assignment of Error

**The Appellant's right to due process was violated by based on the cumulative errors which occurred.**

*First Assignment of Error – Incompetent Child Witness*

**{¶8}** Appellant asserts that the trial court erred when it failed to conduct an examination to determine whether Rosie was competent to testify, even though Appellant's counsel had filed a motion requesting such a determination. Appellant claims that there were allegedly "numerous indicators" that Rosie was mentally

"slow." Therefore, he submits that the trial court abused its discretion when it denied the motion and when it found the child competent to testify.

{¶9} Evid.R. 601(A) provides that every person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." The Supreme Court of Ohio has further explained:

> A plain reading of Evid.R. 601(A) leads to the conclusion that the competency of individuals ten years or older is presumed, while the competency of those under ten must be established. *State v. Wallace* (1988), 37 Ohio St.3d 87, 94, 524 N.E.2d 466, 472. "The rule favors competency, conferring it even on those who do not benefit from the presumption, such as children under ten, if they are shown to be capable of receiving 'just impressions of the facts and transactions respecting which they are examined' and capable of 'relating them truly.'" *Turner v. Turner* (1993), 67 Ohio St.3d 337, 343, 617 N.E.2d 1123, 1128. As a result, absent some articulable concern otherwise, an individual who is at least ten years of age is per se competent to testify.

*State v. Clark*, 71 Ohio St.3d 466, 469, 1994-Ohio-43. Because the trial court has the opportunity to observe the child's appearance, manner of responding to questions, general demeanor and ability to relate facts accurately and truthfully, its determination will not be reversed absent an abuse of discretion. *State v. McNeill*, 83 Ohio St.3d 438, 442, 1998–Ohio–293.

{¶10} Furthermore, in *Clark*, the Ohio Supreme Court concluded that "[a] trial judge, in the exercise of his or her discretion, may choose to conduct a voir-

dire examination of a child witness who is ten years of age or older if the judge has reason to question the child's competency. The decision not to voir dire a child witness under such circumstances will be viewed under an abuse-of-discretion standard. In such circumstances, absent a compelling reason to act otherwise, the failure to conduct a voir-dire examination of a child witness who is ten years of age or older at the time of trial will not constitute reversible error." *Clark*, at paragraph two of the syllabus.

{¶11} Rosie was ten years old at the time of the incident and eleven years old when she testified at trial. Prior to the trial, the court denied defense counsel's motion to conduct a competency hearing on the child, stating that "[t]he child is over the age of ten, presumed competent. There is nothing before the Court which would suggest that she is not competent. If something arises during the course of her testimony, that raises that issue in the Court's mind, it will be explored, at that time." (Tr. pp. 1-2) Furthermore, even though there was a presumption that Rosie was competent to testify, the trial judge did in fact question her as to her understanding of her obligation to tell the truth. The record showed that Rosie answered all of the questions during her testimony consistently and appropriately, and it did not reflect any problems or issues that would have indicated she was not competent.

{¶12} Appellant attempts to allude, for the first time on appeal, that Rosie was not mentally competent because of one comment made by Laura that Rosie was "slow." (Tr. p. 90). However, this issue was never raised in the trial court, and there was nothing in the record to explain the meaning of Laura's comment or to indicate that Rosie was not competent. Furthermore, her testimony demonstrated a complete understanding of everything that occurred.

{¶13} We find no abuse of discretion in the trial court's finding that Rosie was competent to testify. The first assignment of error is overruled.

*Second Assignment of Error – Improper Swearing-in of Witness*

{¶14} In the second assignment of error, Appellant contends that Rosie was not properly sworn in prior to her testimony, pursuant to R.C. 2713.30. He argues that as a result of this error, the trial court relied on unsworn testimony to convict Appellant.

{¶15} Ohio Rule of Evidence 603 provides that "every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." In *State v. Frazier*, 61 Ohio St.3d 247, 252 (1991), the Supreme Court of Ohio specifically noted that Staff Note to Evid.R. 603 stated "that no special verbal formula is required for either oath or affirmation and further provides that 'the rule is designed to afford flexibility in dealing with

children, persons with mental defects, atheists, members of religions not willing to swear an oath to God, to an extent not otherwise covered in Rule 610.'" *Id.*

{¶16} Instead of administering the "traditional" oath to Rosie, an eleven-year old child, the trial court made the following inquiry prior to her testimony:

Q: Rosie, you know what it means to tell the truth?

A: Yes, sir.

Q: Can you tell me what it means to tell the truth? Now you don't have to raise your hand yet, we will get there. You know what it means to tell the truth?

A: Not to lie.

Q: Can you tell me what it means?

A: Like if I said, I stole something, that's a lie.

Q: Okay. Everything you said, can you say that again for me just a little bit louder?

A: If I said I stole something, that's a lie.

Q: Is it good or bad to tell a lie?

A: Bad.

Q: What happens if you tell someone a lie?

A: Then, you might be in trouble.

Q: And you are how old?

A: Eleven

Q: Do you promise everything you are going to say here is going to be the truth?

A: Yes.

(Tr. pp. 93-94)

{¶17} Rosie was able to appropriately explain to the trial court the difference between the truth and a lie, and that a lie is bad. The court specifically asked Rosie if she promised everything she said was going to be the truth, and she answered in the affirmative. The fact that she did not specifically raise her hand to swear an oath does not make her testimony inadmissible. "An affirmation has the same effect as an oath." R.C. 3.20. Furthermore, even *if* the fact that the typical oath was not administered was an error (which we do not find it was), Appellant's failure to object at the time would have precluded raising this issue on appeal. *See In re Butler*, 3d Dist. No. 8-06-03, 2006-Ohio-4547, ¶ 6.

{¶18} The requirements of Evid.R. 603 were fully complied with when the trial court questioned the child-victim and she promised she would tell the truth. Appellant's second assignment of error is overruled.

*Third Assignment of Error – Failure to Suppress Statement to Police*

{¶19} The third assignment of error asserts that the trial court erred when it denied the motion to suppress Appellant's statement to Investigator Rider. Appellant argues that he should not have been questioned without discussing the matter with a parent before he waived his Fifth Amendment Constitutional Rights.

Appellant references several instances in Ohio law where juveniles are afforded special protections or treated differently than adults, such as restrictions on their ability to contract or marry without parental permission. He also cites to several United States Supreme Court cases wherein the Court recognizes differences between adults and juveniles in their level of maturity, sense of responsibility, capacity to understand, and ability to exercise judgment. *See, e.g.*, *J.D.B. v. North Carolina*, --- U.S. ---, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011).

**{¶20}** However, Appellant does not cite to any cases where either the United States Supreme Court or any Ohio court has held that a teenager is required to have a parent present before he or she may agree to speak with a police investigator. The Ohio Supreme Court has previously declined to establish a more rigorous standard with respect to juvenile defendants who are subjected to custodial interrogation, stating that the "(f)act that [a] juvenile is subject to police interrogation does not change nature of constitutional rights afforded to him." *In re Watson*, 47 Ohio St.3d 86, 89 (1989).

**{¶21}** In determining whether parental or guardian presence was required for an effective waiver of *Miranda,* the Ohio Supreme Court has held that "'[w]e perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a

-11-

statement.'" *Id.*, quoting *State v. Bell*, 48 Ohio St.2d 270, 276–277 (1976), reversed on other grounds, *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978). *See, also, Matter of Mabry*, 3d Dist. No. 8-96-03, 1996 WL 668391 (holding that parental presence as a prerequisite to the admission of a juvenile's custodial statement is not required.)

**{¶22}** "Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to *Miranda* warnings where applicable." *In re K.W.*, 3d Dist. No. 9-08-57, 2009-Ohio-3152, ¶ 12, citing to *In re Gault*, 387 U.S. 1, 54, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). "In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement." *Watson* at paragraph one of the syllabus.

**{¶23}** Appellant's counsel had moved to suppress the statement made to Investigator Rider on the basis that Appellant had not knowingly and intelligently waived his rights under *Miranda*. A hearing was held on the motion on September 2, 2010, at which Deputy Tedd McPheron, the deputy who picked up Appellant and transferred him to the sheriff's office, and Investigator Rider testified. The

recording of the approximately hour long interview between Investigator Rider and Appellant was also admitted. The trial court denied the motion.

{¶24} After reviewing the testimony at the suppression hearing and the recording of the interview, we find no error in the trial court's decision. The record shows that there was no coercion, threats, or undue influence utilized with Appellant. When Deputy McPheron arrived at Appellant's home, there was no adult present, so the Deputy had Appellant call his Father to obtain permission to leave. The deputy explained that Appellant was not under arrest, but they did have some questions that they wanted to ask Appellant at the station. He was not hand-cuffed or restrained in any way, and sat in the front seat of the deputy's vehicle.

{¶25} At the sheriff's office, Investigator Rider did not apply any coercion other than to encourage Appellant to tell the truth. Upon his arrival at the station, Appellant was offered a soft drink as well as the opportunity to use the restroom. Before he began any questioning, the investigator thoroughly explained Appellant's *Miranda* rights to him. He gave Appellant a written form with the *Miranda* warnings broken down into five separate parts. Investigator Rider read each part aloud to Appellant, explained it in simple terms, asked him if he understood what each part meant, had him explain back to him what he understood the meaning of each part to be, and had Appellant initial each sentence in addition to signing the entire document. The Investigator made it very clear that it was

Appellant's choice whether or not he wanted to "talk about this" and whether or not he wanted to proceed without an attorney. Appellant, who was just one month away from his fifteenth birthday, told the investigator that he was a good student, receiving mostly A's and B's in school, and that he planned to attend college. He assured the investigator that he understood his rights and that all of his actions were voluntary.

{¶26} Based on the totality of the circumstances, it was evident that the Appellant understood everything that was occurring and that he voluntarily agreed to speak with the investigator. There is no legal requirement that the presence of a parent was necessary. Appellant's third assignment of error is overruled.

*Fourth Assignment of Error – Ineffective Assistance of Counsel*

{¶27} In the fourth assignment of error, Appellant maintains that his trial counsel's performance was deficient and ineffective. Specifically, he claims counsel was ineffective because: (1) counsel failed to submit written arguments in support of his position after the hearing on the motion to suppress Appellant's statement to the investigator; (2) counsel failed to object to leading and suggestive questioning of Rosie by the State; (3) counsel failed to object to the omission of administration of the oath to Rosie; and, (4) counsel failed to confront Jordan as to contradictions in the different version of events he gave.

{¶28} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and that strategy and tactical decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Robinson*, 108 Ohio App.3d 428 (3d Dist.1996).

{¶29} First, we do not find any error in the fact that counsel did not submit a supporting memorandum to the trial court after the hearing on his motion to suppress. Counsel's original motion was extremely detailed and thorough, and discussed literally dozens of the relevant state and federal cases concerning the interrogation of juveniles, and he thoroughly cross-examined the State's witnesses at the suppression hearing. Defense counsel did not offer any witnesses at the suppression hearing, stating instead that "we believe the tape will speak for itself." (Suppression Hearing Sept. 2, 2010 Tr., p. 47) The State, however, had not previously offered any written response to Appellant's counsels original motion,

so its memorandum after the hearing was basically its reply to the legal arguments that defense counsel had previously set forth. It would appear that Appellant's counsel had already made most arguments that were possible, especially since the law and the facts were not in his favor (as discussed in response to the third assignment of error, *supra*). Defense counsel vigorously pursued a thorough defense of Appellant and filed numerous pre-trial motions on his behalf. We do not find that his performance was deficient by the fact that he did not file this one particular memorandum. Furthermore, Appellant has not indicated exactly what arguments were left to be made or how he suffered any prejudice.

{¶30} Next, we do not find that defense counsel's performance was ineffective due to any failure to object to the State's "leading" questions during Rosie's testimony. A review of the record shows that the State was merely developing a child's testimony on a very difficult and delicate topic, not manipulating answers. Evid.R. 611(C) indicates that leading questions should not be used on the direct examination of a witness, "except as may be necessary to develop the witness' testimony." Trial courts generally will allow leeway and special accommodations in cases involving the testimony of young children, especially those who are alleged victims of sexual abuse. *See, e.g., State v. Guttierez*, 3d Dist. No. 5-10-14, 2011-Ohio-3126, ¶ 100; *State v. Clemmons*, 2nd

Dist. No. 22247, 2009-Ohio-2066, ¶ 33; *State v. Rector*, 7th Dist. No. 01AP758, 2002–Ohio–7442, ¶ 28; *State v. Miller*, 44 Ohio App.3d 42, 45 (6th Dist.1988).

**{¶31}** The record showed that defense counsel objected diligently and frequently during the testimony of most of the other witnesses. It certainly would not have been good trial strategy to constantly interrupt the testimony of Rosie with objections, especially objections that would likely have been overruled by the trial court. "Trial counsel's failure to make objections, alone, does not establish ineffective assistance of counsel, because this decision is generally viewed as trial strategy." *State v. Turks*, 3d Dist. Nos. 1-10-02, 1-10-26, 2010-Ohio-5944, ¶ 42, citing State *v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103.

**{¶32}** Next, Appellant claims that his counsel should have objected to the fact that the trial court did not use the traditional swearing-in oath when it had Rosie affirm that she would tell the truth. As our disposition of the second assignment of error indicated, there was no error in the trial court's methods, so there was no reason for defense counsel to register an objection.

**{¶33}** And lastly, Appellant asserts that defense counsel failed to confront witnesses, specifically Jordan. Again, the record shows that defense counsel questioned Jordan appropriately regarding the events at issue in this case. Jordan's testimony was not particularly helpful to Appellant. Defense counsel's line of questioning attempted to imply that Jordan's testimony was influenced by

discussions with his family and the prosecutor. More aggressive questioning of this twelve-year old boy could have either elicited more damaging testimony, or come across as badgering a young witness.

{¶34} We find nothing in the record that would indicate defense counsel's performance was ineffective. Furthermore, Appellant has not shown that any of counsel's actions resulted in prejudice. Appellant's fourth assignment of error is overruled.

*Fifth Assignment of Error – Cumulative Errors*

{¶35} In the final assignment of error, Appellant claims that his right to a fair trial was violated pursuant to the cumulative error doctrine, because the existence of multiple errors resulted in an unfair trial. Appellate claims he was prejudiced due to the cumulative effect of the following errors: trial counsel repeatedly missed objections; the judge failed to swear in the alleged victim; trial counsel failed to respond to requests for written arguments; the competency of the alleged victim was questionable and should have been examined more closely on the record; and trial counsel did not object to the State's leading questioning of the witnesses.

{¶36} Pursuant to the cumulative error doctrine, the existence of multiple errors, which may not individually require reversal, may violate a defendant's right to a fair trial. *State v. Madrigal*, 87 Ohio St.3d 378, 397, 2000–Ohio–448, citing

*State v. DeMarco*, 31 Ohio St.3d 191, at paragraph two of the syllabus. To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors. *State v. Williams*, Cuyahoga App. No. 94261, 2011–Ohio–591, ¶ 25.

{¶37} As discussed above, we did not find that there were any errors, harmless or otherwise, in the assignments of error raised by Appellant. The actions of trial counsel and the court did not constitute error, either individually or cumulatively. Therefore, the fifth assignment of error is overruled.

{¶38} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**